

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable John C. McAdams, Commissioner
Department of Banking
Austin, Texas

Attention:  H. A. Jamison

Dear Sir:                               Opinion No. O-4998
                                        Re:  Loan limit of a Rural Credit
                                             Union organized and operating
                                             under Articles 2461-2484a,
                                             V. A. C. S.

        Your request for opinion dated November 19, 1942,
has been received and considered by this department. We
quote from your letter of request as follows:

        "We direct your attention to the whole of
    Articles 2461 to 2484a, being that section of the
    law which has to do with the organization, super-
    vision and liquidation of credit unions. Your
    particular attention is directed to the following
    quoted passages or excerpts from various articles.

        "Article 2461.  'The words "credit union"
    shall mean a cooperative association formed for
    the purpose of promoting thrift among its members,
    and to enable them, when in need, to obtain for
    productive and provident purposes _moderate_ (empha-
    sis ours) loans of money for short periods and at
    reasonable rates of interest.' (As amended Acts
    1939, 46th Leg., p. 221, Sec. 3)

        "Article 2477.  '- - - - Loans to any one mem-
    ber shall not exceed Two Hundred Dollars ($200), or
    ten (10) per cent of the capital and surplus, which-
    ever shall be the larger.'

        "Article 2484a.  'The term "capital and surplus"
    as used in this Act shall mean the aggregate of the

Honorable John Q. McAdams, Commissioner, Page 2

paid-up shares of the members plus the total cash deposits of the members with the credit union less any and all outstanding obligations and liabilities of the credit union.' (Acts 1939, 46th Leg., p. 221, Sec. 5)

"The question has arisen regarding the legislative intent incident to the loan limit of credit unions, as the language used in Article 2484a when considered in the light of the loan limit reference under Article 2477 appears to be such as capable of two or three constructions. We are setting out below the condensed balance sheet of one of the state chartered credit unions, and will appreciate specific advice from you as to the loan limit of a union whose balance sheet is as shown.

| | | |
|---|---|---|
| "Loans to Members | | $174,679.68 |
| Cash on hand and in banks | | 20,854.96 |
| Furniture and Fixtures | | 404.50 |
| Total Assets | | $195,939.14 |
| | | |
| Share Account | $114,671.66 | |
| Deposit by Members | 57,643.83 | |
| Individual Ledger Balance | 685.49 | 173,000.98 |
| Accounts Payable | | 1,637.06 |
| Total liability exclusive of net capital a/c | | 174,638.04 |
| Net Undivided Profits | 12,897.60 | |
| Guaranty and/or Reserve Fund | 8,403.50 | 21,301.10 |
| Total Liabilities | | $195,939.14 |

"Technically speaking, it would seem that Article 2484a and the applicable portion of Article 2477 when projected into the above balance sheet would suggest a maximum loan limit of less than

Honorable John A. McAdams, Commissioner, Page 3

nothing which, of course, is an impossible situation, for the aggregate of the paid-up shares of the members, plus the total cash deposits of the members with the credit union, is shown to be $173,000.98, and after deducting all outstanding obligations and liabilities, including the liability to members as such, plus the accounts payable item, the resulting figure would be $1,637.06 and obviously 10% of the minus figure would still leave a minus. If it was the legislative intent to say that the term 'capital and surplus' as used in this Act shall mean the aggregate of the paid-up shares of the members, plus the total cash deposits of the members with the credit union less any and all outstanding obligations of the credit union, exclusive of its liabilities to members and shareholders as such, then the loan limit in the instant case would appear to be 10% of $171,363.92, being the net amount of paid-up shares of the members plus the total cash deposits of the members less outstanding obligations exclusive of liability to members, or $17,136.39, which would seem to be an unreasonable loan limit for any credit union.

"If, on the other hand, it was the legislative intent to define capital and surplus insofar as the use of that term is concerned in determining the loan limit to a percentage of the difference between total assets less outstanding liabilities, including liability to shareholders and members as such, the resulting figure in the instant case would be $21,301.10, or a loan limit of $2,130.11, which would be in line with the conservative atmosphere that seems to surround the operation of credit unions by which we mean that it seems obvious to us that since the Legislature did not see fit to require a sizeable paid in capital classifiable as free capital or reserves incident to the organization of a credit union, and since further the Legislature has seen fit to set out in detail conservative practices incident to the operation of a credit union, perhaps, in recognition of the fact that free capital or reserves are not required, it seems to us that there must have been a legislative intent to project the same conservative treatment into the matter of a credit

Honorable John G. Holdane, Commissioner, Page 4

union's loan limit. Particularly, do we believe this to be true in that the language incident to the loan limit of a credit union uses a conservative dollar figure by providing that 'loans to any one member shall not exceed Two Hundred Dollars ($200), (emphasis ours) or ten (10) per cent of the capital and surplus, whichever shall be the larger.'

"Referring further to the balance sheet set out above, from one point of analysis the loan limit would be $2,130.11, from still another it would be $17,136.39 and from still another it would be $19,430.20, being the aggregate of the assets of the union less its accounts payable and the projection of 10% into such amount.

". . . ."

The four solutions which you suggest may be summarized as follows:

(a) "Capital and surplus" is the difference obtained by deducting a subtrahend composed of all outstanding liabilities, including therein cash deposits and the amount of the paid-up shares, from a minuend composed of the amount of the paid-up shares plus the cash deposits.

(b) "Capital and surplus" is based on the same formula as in (a) but the cash deposits and the amount of the paid-up shares are not included among the liabilities in the subtrahend.

(c) "Capital and surplus" is the difference obtained by deducting a subtrahend composed of all outstanding liabilities, including cash deposits and the amount of the paid-up shares, from a minuend based on total assets.

(d) "Capital and surplus" is based on the same formula as in (c) but the cash deposits and the amount of the paid-up shares are not included among the liabilities in the subtrahend.

As you well demonstrate in your letter of request, the application of the formula set forth in (a) leads to

Honorable John Q. McAdams, Commissioner, Page 5

ridiculous results since it is mathematically impossible for the difference thereby obtained to be more than zero, and, in the great majority of cases, such difference will be less than zero. The absurdity of such a formula is further revealed when we consider that Article 2464, V. A. C. S., as amended, limits borrowing by a Credit Union to 15% of "capital and surplus", total investments to 25% of this amount, and individual investments to 5% of this figure. If this formula were to be adopted, we would be forced to say that a Credit Union's power to lend, to borrow, and to invest are all measured either by a fractional part of zero or by a fractional part of a negative amount.

Employment of either formula (c) or (d) would seem to be precluded by the fact that each of these formulae employs "total assets" as a minuend whereas Article 2482a, V. A. C. S., as amended, specifically requires that the minuend be "the aggregate of the paid-up shares of the members plus the total cash deposits". Although the term "capital and surplus" is sometimes used as synonymous with "total assets" such usage is precluded in this problem by the specific language of the above-cited statute.

Formula (b) employs a minuend which conforms to the statutory requirement but uses a subtrahend which excludes the amount of the paid-up shares and the cash deposits from the "outstanding obligations and liabilities". In the balance sheet which you have submitted, the effect of this exclusion is to make "accounts payable" the only item in the subtrahend. As will be shown below, we feel that "accounts payable" does not constitute the sole outstanding liability of this Union; consequently, we are likewise forced to reject this formula.

As can be seen from the above, the difficulty in this problem centers around the determination of those items which may be classed as "outstanding obligations and liabilities" of the Union. We shall consider the various possible items in this balance sheet separately:

Share Account (Paid-Up Shares): Since Credit Unions of the kind under consideration are corporations (Articles 2463 and 2464 V. A. C. S., as amended), their shares are governed by the principles generally applicable to shares of corporate stock. It is well recognized that the holder of such a share is not in the same position as the holder of an obligation or liability of a corporation. The shareholder has no

Honorable John Q. McAdams, Commissioner, Page 6

direct interest in or claim to the assets of the corporation. Although the officers of the corporation owe certain duties of loyalty and care to the shareholder, the corporation per se owes him nothing. Despite the fact that a shareholder does possess substantial rights to the surplus of a corporation, once dividends are properly declared, and despite the fact that he is entitled to a pro rata share of the corporate assets upon dissolution (see Article 2483, V. A. C. S., as amended), these rights are of an inchoate nature so long as the organization is a going concern and so long as no specific property has been allocated for the payment of dividends. McAllister v. Eclipse Oil Company, 98 S.W. (2d) 171, 176 (Sup. Ct.); 10 Tex. Jur. 780-781, Sec. 152-153. Consequently the shares of Credit Unions do not constitute "obligations or liabilities" and the amount of such shares is properly excluded from the subtrahend in the resolution of this problem.

Deposits by Members and Individual Ledger Balances: Credit Unions are authorized to receive the cash deposits of their members (Articles 2462 and 2466, V. A. C. S., as amended), and such deposits apparently are received not as capital investments by the members but as mere deposits comparable to those received by ordinary savings and commercial banks. Such deposits are plainly direct obligations and liabilities of the receiving organization. As such they should be included in the subtrahend under Article 2484a. We have been informed by a representative of your Department that the "Individual Ledger Balances" account of this company represents cash deposits by members which have been segregated from the general deposit account. Consequently this account and the cash deposit account will be treated the same for purposes of this opinion. We wish to note, however, that we are not here passing on the status of the Individual Ledger Balances account when such account contains items other than segregated cash deposits.

Accounts Payable: The status of such accounts as obligations and liabilities and the necessity for their inclusion in the subtrahend is too patent to require discussion.

Net Undivided Profits: Until dividends are lawfully declared and a portion of the net profits is allocated for the satisfaction of such declaration, net profits constitute merely an accretion to the capital investment of the shareholders and are to be treated accordingly. See 10 Tex. Jur. 686, Sec. 73. Consequently such profits do not represent obligations or liabilities of the Union. Notice, however, that

dividends declared but unpaid are direct obligations of the declaring organization and should be included in the subtrahend.

Guaranty and/or Reserve Fund: The guaranty fund of a Credit Union is established and maintained under Article 2482 "to meet contingencies or losses in its business". Although such funds are reserves for possible liabilities, obligations or losses, they in no sense represent "outstanding" obligations or liabilities; rather they constitute a segregated portion of surplus kept inviolate from dividend declarations.

Thus, following the definition contained in Article 2484a, the "capital and surplus" of the instant Credit Union is obtained by adding the cash deposits (including ledger balances) to the amount of the paid-up shares and deducting therefrom the sum of the cash deposits (including ledger balances) and the accounts payable. Ten percent of the figure thus obtained (10% of $113,034.60 or $11,303.46) represents the loan limit of the Credit Union under consideration.

The loan limit thus obtained may seem unduly high in view of the fact that such Unions avowedly were created to provide "moderate loans" (Article 2461) and in view of the general conservatism of the Articles governing the creation and operation of such Unions. Moreover, the fact that the old loan limit of $1,000 was changed in 1939 (see Article 2477, supra) to the present "Two Hundred Dollars or ten per cent of the capital and surplus, whichever shall be the larger" may well indicate an intention that the new limit be even stricter than that formerly prevailing. However, if such an intention were present at the time that the present loan limit was established, the language used to express it was singularly inapt for that purpose.

Trusting that this fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED DEC 8

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

By *R. Dean Moorhead*

R. Dean Moorhead
Assistant

RDM:mp